In re Kenney David MACDONALD, Appellant.

Leonard W. Jordan, Appellant.

Reuben Walter Thompson and Patricia J. Thompson, Appellants.

Nos. 04–2764 BBD, 04–2766 BBD, 04–2979 BBD, 04–2765 BBD.

United States District Court, W.D. Tennessee, Western Division.

Oct. 31, 2006.

B. David Sweeney, John L. Ryder, Harris Shelton Dunlap Cobb & Ryder, Memphis, TN, for Appellants.

Holly W. Schumpert, Law Office of Holly W. Schumpert, Memphis, TN, for Appellants.

Sean M. Haynes, Trial Attorney, Office of the U.S. Trustee, for Region 8, Memphis, TN, P. Matthew Sutko, Trial Attorney, Executive Office for U.S. Trustees, Washington, DC, Paul Bridenhagen, Trial Attorney, Executive Officer for U.S. Trustees, Washington, DC, for U.S. Trustees.

**ORDER AFFIRMING BANKRUPTCY COURT'S JUDGMENT IN *IN RE MACDONALD* AND *IN RE THOMPSON* AND REVERSING AND REMANDING BANKRUPTCY COURT'S JUDGMENT IN *IN RE JORDAN***

DONALD, District Judge.

Before the Court are four appeals from the judgments of the United States Bank-

ruptcy Court for the Western District of Tennessee in three separate bankruptcy cases. Because each of these appeals confronts the same fundamental legal issue, and because the relevant facts are nearly identical in the three cases, the Court has consolidated the four appeals in the interest of judicial economy. The Court herein affirms the bankruptcy court's judgment in two of the three cases, and reverses the bankruptcy court's judgment and remands in the third case. In so ruling, the Court seeks to bring resolution to a matter of law which has sharply divided this district's bankruptcy court.

## I. PROCEDURAL BACKGROUND

In mid–2004, the Office of the United States Trustee filed motions to dismiss on improper venue grounds in a number of bankruptcy cases filed in the Western District of Tennessee by residents of Arkansas and Mississippi. Several such cases were consolidated for hearing, and on August 4, 2004, Judge William Brown held that an improperly venued case cannot be retained by the bankruptcy court and must be dismissed or transferred to a district where the case could have properly been brought. See In re Ross, 312 B.R. 879, 892 (Bankr.W.D.Tenn.2004). On the following day, August 5, 2004, Chief Judge David S. Kennedy held that an improperly venued case could be retained if the interests of justice and the convenience of the parties so required. See In re Jordan, 313 B.R. 242, 264 (Bankr.W.D.Tenn.2004). On August 25, 2004, Judge Jennie Latta entered an order transferring the case of In re Thompson to the Northern District of Mississippi, citing In re McDonald, 219

B.R. 804 (Bankr.W.D.Tenn.1998), in which Judge Latta had held that a case filed in a district where venue does not properly lie pursuant to 28 U.S.C. § 1408 must be either dismissed or transferred, and that a bankruptcy court has no discretion to retain such a case. McDonald, 219 B.R. at 805. The debtors appealed the order and the transfer order was subsequently stayed by this Court.

One of the debtors in the Ross case filed an appeal of the bankruptcy court's transfer.[1] This appeal, In re McDonald, was consolidated by this Court with the appeal by the United States Trustee in In re Jordan on October 6, 2004. On November 22, 2004, the Court further consolidated the McDonald and Jordan cases with the appeal by debtors in In re Thompson.

In the Jordan case, the United States Trustee filed an objection to the Report of No Distribution filed by the Chapter 7 Trustee in that case.[2] The objection was overruled and the U.S. Trustee filed a separate notice of appeal from that order, which was filed with this Court as Clippard v. Jordan. On December 10, 2004, the Court consolidated Clippard with the McDonald, Jordan and Thompson cases. It is the resulting consolidation of four appeals from three separate bankruptcy cases that is presently before the Court.

## II. FACTUAL BACKGROUND

The factual circumstances relevant to the contested legal issue are virtually identical among the three cases. Residents of Mississippi (hereinafter "the debtors") filed voluntary petitions for bankruptcy protection under either Chapter 7 or

---

1. Two other Ross debtors also appealed. These appeals, however, were subsequently dismissed.

2. The objection was based on the same grounds raised in the motion to dismiss or

transfer, i.e., because the bankruptcy court did not have proper venue, the United States Trustee argued, it could not properly rule on the Chapter 7 trustee's report.

Chapter 13 in the Western District of Tennessee. The debtors concede that venue in the Western District of Tennessee is not technically proper, but argue that the venue requirements under federal law can be waived by the debtors. They further argue that the bankruptcy courts have legal authority to retain an improperly venued case in the interest of justice and for the convenience of the parties. The United States Trustee (hereinafter "the Trustee") argues in all three cases that the bankruptcy court lacks the legal authority to retain an improperly venued case in the face of a timely motion of a party in interest to dismiss or transfer the case.

## III. STANDARD OF REVIEW

■ The Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(3). In a bankruptcy proceeding, the district court reviews the bankruptcy court's conclusions of law *de novo* and upholds its findings of fact unless they are clearly erroneous. *Nicholson v. Isaacman (In re Isaacman)*, 26 F.3d 629, 631 (6th Cir.1994). There is no dispute over the findings of facts in these cases. Therefore, the Court reviews the consolidated appeals before it *de novo.*

## IV. ANALYSIS

### a. The Bankruptcy Code in Historical Context

In 1984, Congress revised the Bankruptcy Code, in response to the Supreme Court's holding in *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) that the Code impermissibly delegated Article III judicial powers to the bankruptcy courts, which under the Bankruptcy Act of

1978 were essentially independent trial courts. The revised Code granted original and exclusive jurisdiction of all bankruptcy cases to the federal district courts, and then authorized the delegation of such authority to the bankruptcy courts as adjuncts to the district courts.

The 1984 revisions also included changes to the bankruptcy venue provisions unrelated to the constitutional concerns addressed in *N. Pipeline.* The legislative intent and practical impact of these collateral modifications remain murky, and are at the heart of the controversies on appeal before the Court.

Under the revised Code, venue for bankruptcy cases is governed by 28 U.S.C. § 1408,[3] which provides, with exceptions not pertinent to the matter before the Court, that

> a case under title 11 may be commenced in the district court for the district—
>
> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district[.]

■ In other words, a debtor seeking bankruptcy protection may file a petition in any district where he or she currently lives, conducts a business or has principal assets. To satisfy this requirement, for all

---

**3.** Section 1408(a) of title 28 replaced 28 U.S.C. § 1472 without any substantive change to the prior provision, other than substituting "district court" for "bankruptcy court" in response to *N. Pipeline.*

practical purposes, the debtor's residence, business or assets must have been established in the district for at least 180 days.

Section 1412, the companion "change of venue" provision to § 1408, replaced 28 U.S.C. § 1475 and allows a court to "transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."[4] Although § 1412 is virtually identical to its predecessor,[5] the scope and meaning of the new provision is the subject of considerable controversy, and is at the heart of the split between the bankruptcy judges in this district on the subject of retention of improperly venued bankruptcy cases.

Section 1477 was eliminated from the old code without any obvious replacement. This section, entitled *Cure or waiver of defects*, provided, in relevant part, that

> "[t]he bankruptcy court of a district in which is filed a case or proceeding laying venue in the wrong division or district may, in the interest of justice and for the convenience of the parties, *retain such case or proceedings*, or *may transfer*, under section 1475 of this title, such case or proceeding to any other district or division."

28 U.S.C. § 1477 (2000) (emphasis added).

Another section of the federal jurisdiction and venue statute central to the present controversy is 28 U.S.C. § 1406(a),

which remained unaltered as part of the 1984 revision and provides that "[t]he district court of a district in which is filed *a case* laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." (emphasis added).

The final major piece of the venue puzzle is Federal Rule of Bankruptcy Procedure 1014, which provides in part,

> *Cases Filed in Improper District.* If a petition is filed in an improper district, on timely motion of a party in interest and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, the case may be dismissed or transferred to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

Fed. R. Bankr.P 1014(a)(2).

**b. The Two Interpretations**

The debtors in the three cases on appeal focus their argument for retention of their cases in this district's court on a proper reading of §§ 1408 and 1412 of Title 28 of the United States Code.[6] They concede that filing their cases in the Western District of Tennessee was not in technical compliance with the requirements of § 1408. They observe, however, that the language of § 1408 is in permissive rather

---

**4.** "Although these statutes refer to the 'district court,' the bankruptcy court is a unit of the district court, 28 U.S.C § 151, and no one in these cases has disputed that the bankruptcy court stands in the place of the district court for purposes of the venue statutes." *In re Ross*, 312 B.R. 879, 884 (Bankr.W.D.Tenn. 2004).

**5.** Section 1475 reads as follows: "A bankruptcy court may transfer a case under title 11 or a proceeding arising under or related to such a case to a bankruptcy court for another

district, in the interest of justice and for the convenience of the parties." 28 U.S.C. § 1475 (2000). Section 1412 provides as follows: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412 (2000).

**6.** The legal arguments of the debtors in all three cases are nearly identical and are summarized here as if they represent a single, undifferentiated body of argument.

than mandatory terms, i.e., it states that a case *may* be commenced in certain districts. "If Congress had intended [the statute] to require the filing of bankruptcy cases to be in only those venues that the debtor was domiciled, or had a ... business ... then the statute would have read 'must be commenced,' 'shall be commenced' or 'may only be commenced' ...'" (Br. Appellants R.W. and P. Thompson 11.) Since § 1408 is "merely a procedural rule," they argue, it does not "delineate what cases bankruptcy courts are competent to adjudicate." (Br. Appellant MacDonald 6.)

■ Judge Kennedy agreed with the debtors position on this issue, finding that "[s]tanding alone, there is nothing inherently sinister, vexatious, or contrary to accepted good faith principles about filing a bankruptcy case in a technically improper venue.[7] It should be emphasized that 28 U.S.C. § 1408 regarding case venue is permissive in nature." *In re Jordan,* 313 B.R. 242, 261 (Bankr.W.D.Tenn.2004). Judge Brown, on the other hand, found the debtors' argument unavailing, holding that it would effectively render § 1408 "meaningless." *In re Ross,* 312 B.R. 879, 885 (Bankr.W.D.Tenn.2004). If Congress had intended § 1408 as providing "mere examples" of proper venue, he asks, "wouldn't Congress have included such language as 'including but not limited to?'" *Id.* In Judge Brown's view, interpreting § 1408 as allowing venue "wherever the debtor is employed, or wherever the debtor has some minimal contacts, or wherever the convenience of the debtor dictates," is contrary to its plain language and would amount to impermissible substitution of the court's policy judgment for that of Congress. *Id.*

Having asserted that § 1408 leaves the court with considerable discretion, the debtors next argue that the court possesses, under 28 U.S.C. § 1412, the authority to retain an improperly venued case under certain, statutorily-provided circumstances. Here again, the debtors find the court's authority in the permissive nature of the statute's language rather than its substance. While § 1412 merely provides that the court "may transfer a case ... in the interest of justice or for the convenience of the parties," to the debtors "it seems logical that if a transfer is not in the interest of justice or for the convenience of the parties, the court may also decide not to transfer the case." (Br. Appellant MacDonald 7) (quoting *In re Lazaro,* 128 B.R. 168, 172 (Bankr.W.D.Texas 1991)).

Agreeing with this position, Judge Kennedy opined that the court not only has the discretion to hear an improperly venued case, but *must* retain such a case "if the interest of justice and the convenience of the parties do not warrant transferring the case." *Jordan,* 313 B.R. at 258 (quoting *In re Lazaro,* 128 B.R. 168, 174). His conclusion is buttressed with legislative history and principles of statutory construction. He correctly explains that the pre–1984 bankruptcy act contained provisions, 28 U.S.C. §§ 1475 and 1477, for both the transfer of properly venued bankruptcy cases and the "cure and waiver" of those cases improperly venued. *Id.* at 254. He notes that under § 1477, a court had the option of retaining an improperly venued case or transferring it ·to any other district. *Id.* at 255. Dismissal was not an

---

**7.** This Court is in agreement with this sentiment and concludes that an honest but unfortunate debtor needing the immediate protection of the automatic stay may, at the outset, file in an improper venue on an emergency basis. The subsequent disposition of such an improperly venued case is governed by the pertinent statutes and regulations, as discussed in detail *infra.*

option under this provision. Under the 1984 restructuring, § 1475 was replaced by § 1412 without substantive change, but § 1477 was omitted without an obvious replacement, creating what Judge Kennedy calls a "case venue gap." *Id.* He attributes the omission to "apparent legislative error." *Id.*

In *In re Jordan*, Judge Kennedy quotes extensively from *In re Lazaro*, and explicitly adopts the reasoning contained therein regarding the proper construction of § 1412. *Jordan*, 313 B.R. at 262. *Lazaro* holds that "the most probable intention of Congress was to streamline the language and not to make a substantive change." 128 B.R. at 173 (quoting *In re Leonard*, 55 B.R. 106, 109–10 (Bankr.D.D.C.1985)). Therefore, given the "maximum flexibility" that is "the hallmark for venue issues in Title 11 cases," it should be assumed that Congress intended for § 1412 to govern both properly and improperly venued cases, implicitly preserving the court's authority of retention in an improper forum formerly conveyed in § 1477. *Id.* at 173.

Judge Kennedy also scrutinizes Rule 1014(a) of the Federal Rules of Bankruptcy Procedure, "which now purports to implement 28 U.S.C. § 1412 ... whether the transferee court is a proper venue or not." *Id.* at 258. He concludes that Rule 1014(a)(2) and its accompanying Advisory Committee Note "go far beyond the scope of the enabling statute" by addressing dismissal and retention issues. *Id.* at 259. By prohibiting retention and allowing dismissal, Judge Kennedy asserts, the Rule modifies or enlarges the provisions of § 1412 in violation of Fed. R. Bankr.P. 9030, which forbids any construction of the Federal Rules of Bankruptcy Procedure that extends or limits the jurisdiction of the courts or the venue of any matters therein, and 28 U.S.C. § 2075, which provides that the Bankruptcy Rules "shall not

abridge, enlarge, or modify any substantive right." *Id.* at 260, 262. Judge Kennedy further concludes that Rule 1014(a)(2) is contrary to the spirit of Fed. R. Bankr.P. 1001, which seeks to "secure the just, speedy, and inexpensive determination of every case and proceeding." In light of his findings, Judge Kennedy held Rule 1014(a)(2) to be "impermissible procedural legislation."

In sharp contrast, Judge Brown scarcely mentions § 1412. Unlike Judge Kennedy, he assumes the validity of Rule 1014(a)(2), and relying on its plain language, states simply that "the Court is not given the option of retaining the improperly venued case." *In re Ross*, 312 B.R. 879, 891 (Bankr.W.D.Tenn.2004) (quoting Judge Brown's prior decision in *In re Berryhill*, 182 B.R. 29, 31 (Bankr.W.D.Tenn.1995)). He also cites *In re McDonald* as authority for the proposition that "a combination of 28 U.S.C. § 1412's venue transfer provisions and Rule 1014 require[ ] a conclusion that the court receiving an improperly venued case [does] not have the option of retaining that case when presented with a timely venue motion." *Id.*

In *In re McDonald*, the decision upon which *In re Thompson* is based, Judge Latta addresses the *In re Lazaro* reasoning head on. 219 B.R. 804 (Bankr. W.D.Tenn.1998). She finds that the *Lazaro* court "added a lot of substance into section 1412 which does not exist on its face," and that "the history of section 1412 supports the majority rule that that section does not authorize a bankruptcy court of improper venue to retain a case." *Id.* at 806 (quoting *In re Sorrells*, 218 B.R. 580, 585–87 (10th Cir. BAP 1998)) (internal quotations omitted). An important element in the *McDonald* ruling was the conclusion that "since section 1412 and section 1475 are so similar, section 1412 should have the same scope as section 1475." *Id.*

(quoting *Sorrells*, 218 B.R. at 586). "Since there is no bankruptcy-specific statute applicable to improperly venued cases, section 1406(a) must apply in bankruptcy, requiring such a case to be dismissed or, if it be in the interest of justice, transferred to a court in which venue is proper." *Id.*

Echoing this finding in *McDonald*, the Trustee focuses its arguments for transfer and against retention almost entirely on the proper interpretation and application of 28 U.S.C. § 1406(a) in the context of bankruptcy cases. The Trustee presents an analytic structure starkly at odds with that presented by the debtors and articulated in *In re Jordan*, and relies extensively on the reasoning contained in *In re Swinney*, 300 B.R. 388 (Bankr.M.D.Ga.), aff'd, 309 B.R. 638 (M.D.Ga.2004), for its determination that § 1406 has full application in bankruptcy cases. (Br. Appellee, *In re MacDonald* 7–9.) The Trustee concludes that the bankruptcy courts are therefore bound by the terms of § 1406 and under those terms have no discretion to retain cases filed in the wrong venue. *Id.* at 8.

According to the Trustee, the plain language of Fed. R. Bankr.P. 1014 and the Advisory Committee Note to that rule provides further evidence of the validity of the *Swinney* view of §§ 1406 and 1412. The Trustee observes that Rule 1014 sets up a neat division between "Cases Filed in Proper District," provided for in section (a)(1), and "Cases Filed in Improper District," provided for in section (a)(2). The language of section (a)(1) mirrors the language of § 1412, whereas the language of section (a)(2) reflects that of § 1406(a). The accompanying Advisory Committee Notes underscores the intention behind the rule: "The rule is amended to delete the reference to retention of a case commenced in the improper district. Dismissal of a case commenced in the improper

district as authorized by 28 U.S.C. Sec. 1406 has been added to the rule."

Judge Kennedy observes that both §§ 1404 and 1406 permit the transfer of cases only to a district in which the case *"could have been brought,"* whereas § 1412 contains no such restrictive clause, implying that for bankruptcy cases transfer is permissible to *any* district. *Jordan*, 313 B.R. at 255. This distinguishing characteristic is reflective of the fact that "[v]enue considerations in bankruptcy *cases* are decidedly quite different from venue issues involving specific civil action litigation," leading Judge Kennedy to conclude unequivocally that § 1406 does not apply to bankruptcy cases under title 11. *Id.* at 255–56.

Judge Brown's decision in *In re Ross*, contains no mention of § 1406, relying instead on the "plain language" of § 1408 and Rule 1014(a)(2) to conclude that "the Court is not given the option of retaining the improperly venued case." 312 B.R. at 891 (quoting *Berryhill*, 182 B.R. at 31).

### c. Synthesis

While sharp disagreement characterizes the debate over the proper application of the venue provisions in bankruptcy cases, there is one issue upon which there seems to be near universal agreement: Congress's intent in altering the bankruptcy venue provisions is not altogether clear, and the clues as to that intent are scant in both the legislative record and in the words of the statutory provisions themselves. The Court takes this crumb of consensus as its starting point in constructing a resolution to the present controversy.

 Several principles of statutory construction are clearly apropos in guiding the Court as it proceeds from this point of departure. First is the presumption that

Congress "says in a statute what it means and means in a statute what it says there." *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). This "cardinal canon" instructs the Court to begin its task of resolution of the dispute over the meaning of a statute with the language of the statute itself. *Id.; United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

■ This canon is particularly applicable in the construction of 28 U.S.C. § 1408. The provision sets forth with considerable specificity the venue requirements for filing a case under title 11, and is the sole provision governing venue in bankruptcy cases. If venue is to have any meaning at all in a bankruptcy context, the Court must consider the terms of § 1408 as providing legal constraints on bankruptcy filing, not mere suggestions.

■ The Court finds unpersuasive the debtors' interpretation of § 1408's use of the word "may" in the phrase "may be commenced." While "may" does convey permission, it is doubtful that its use here was intended to imply that a bankruptcy case may be commenced anywhere at all. A statute must be construed to avoid absurdity, *Holy Trinity Church v. United States,* 143 U.S. 457, 460, 12 S.Ct. 511, 36 L.Ed. 226 (1892), and under the interpretation suggested by the debtors § 1408 would be rendered quite devoid of meaning. If the permissive term has any significance at all in this context, it is only that bankruptcy filings under title 11 are voluntary rather than mandatory. While the

statute would have been clearer still if Congress had chosen to insert the word "only" after "may," it is nonetheless amply clear that § 1408 conveys the precise venue requirements Congress intended to impose upon debtors seeking bankruptcy protection.[8]

Unfortunately, the conclusion that Congress "said what it meant and meant what it said" in § 1408 provides only the tiniest step forward on the road to resolving the controversy before the Court. The debtors, after all, concede that the venue in which they filed was improper, or at least "technically improper." A properly narrow reading of § 1408 lends credence to the proper/improper dichotomy embodied in Rule 1014, but it contributes little toward a determination of the scope of the bankruptcy court's authority regarding such improperly venued cases.

Beneath the sea of words contained in the briefs and opinions before the Court lies a single essential conundrum: when Congress eliminated § 1477 from the Bankruptcy Act, what provision did Congress intend to take its place in governing improperly venued cases and proceedings? The debtors argue, relying on Judge Kennedy's ruling in *Jordan* and decisions by a vocal minority of the bankruptcy courts, that since there is no evidence that Congress intended to depart substantially from the prior version of the Act, it must have intended for the substance of § 1477 to be imbibed into the new § 1412. The Trustee avers, relying on the reasoning of Judge Latta and numerous other courts, that § 1406 is the heir apparent of § 1477

---

8. The parallel venue provision governing civil actions, 28 U.S.C. § 1391, frequently, but not uniformly, uses "may ... be brought *only*." *See* 28 U.S.C. § 1391(a)-(c) (2000). In § 1391(e), providing for venue where defendant is a government official, however, the words "may ... be brought in any judicial district," are used. In the context of this statute at least, it appears that "only" is merely used for emphasis, without altering the substance or scope of the provision.

rather than § 1412.[9] Based on this assertion, the Trustee concludes that the court is precluded from retaining improperly venued cases. From this perspective of the statute, § 1412 merely replaces former § 1475, and applies only to bankruptcy cases filed in the proper venue pursuant to § 1408.

Can this Court presume, as some have, that Congress intended no "substantive change" in the 1984 revisions? *See Lazaro*, 128 B.R. at 173. Or should the Court presume, as others have suggested, that Congress must have simply erred in its omission of § 1477 without an appropriate replacement, creating a "venue gap"? *See Jordan*, 313 B.R. at 255. This Court finds both of these presumptions to be unwarranted and ill-advised.

■ The Court chooses to adopt, first and foremost, a presumption of fundamental legislative competence on the part of Congress. Furthermore, the Court recognizes that the repeal of § 1477 without a replacement stands in stark contrast to the close pairing, without substantial revision, of the predecessor/successor provisions of §§ 1472/1408 and §§ 1475/1412. The Court must assume that the markedly different treatment of § 1477 was purposeful, and looks to the structure that Congress left in place to divine that purpose. It is guided in this effort by the principle that statutory construction is "a holistic endeavor." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.* 484 U.S. 365, 371, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

"A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme-because the same terminology is used elsewhere in a context that makes its meaning clear, . . . or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."
*Id.*

Prior to the 1984 revision to the Bankruptcy Code, venue was governed primarily by two trios of statutory provisions:[10] for civil actions, 28 U.S.C. § 1391 set forth the general requirement for proper venue; § 1404 addressed the transfer of properly venued civil actions; and § 1406 provided for dismissal or transfer of improperly venued cases. For bankruptcy cases, § 1472 was the venue provision; § 1475 covered transfer of properly venued cases and proceedings; and § 1477 addressed those improperly venued, allowing for retention or transfer, but not dismissal.

With the 1984 revision, only the provisions for venue of bankruptcy cases and proceedings were changed. For the most part, the statutory changes consisted solely of the substitution of "district court" for "bankruptcy court," in conformity with *N. Pipeline*. As previously mentioned, Section § 1472 was replaced by § 1408 without substantial change; § 1475 was replaced by § 1412 without substantial change; and § 1477 was repealed without an obvious replacement.

This statutory history simply does not support the proposition that Congress intended to maintain the status quo. If it

**9.** Judge Brown's *In re Ross* opinion supports the Trustee's position on § 1406 only indirectly: by deferring to Rule 1014 as precluding retention, Judge Brown is implicitly adopting the Advisory Committee's statement that the amended Rule 1014(a)(2) incorporates § 1406.

**10.** In the interest of clarity, provisions which are not pertinent to the present controversy are not included in this brief summary.

had intended to do so, the obvious course would have been to replace § 1477 with another provision with nearly identical language, merely substituting "bankruptcy court" with "district court," as it did with §§ 1472 and 1475. That a different course was chosen is a strong indication that a different outcome was intended.

The notion that Congress collapsed its treatment of properly and improperly venued cases into the single sentence of § 1412 appears equally implausible. If, as the Court has determined, § 1408 is intended to distinguish properly venued cases from those improperly venued, then it would be incongruous for the statute to treat these two categories of cases as if they were one.

Section 1477 expressly granted the court, in special circumstances, authority to retain improperly venued cases. This *Cure or waiver of defects* section maintained harmony with the *Venue* provision by establishing an explicit exception to the restrictions on venue contained therein. Implicit in the relationship between §§ 1472 and 1477 was the idea that without such an express statutory exception the court would be without the authority to hear a case filed in violation of the venue statute.

The debtors' construction of § 1412, piggybacking transfer of improperly venued cases onto the provision governing properly venued ones, is in marked discord with this fundamental principle. It assumes an implicit authority which Congress formerly found necessary to make explicit. Because this interpretation effectively renders the venue provision inoperative, it is unavailing. The Court therefore concludes that § 1412 must be construed to have the same scope as its predecessor, i.e., it governs only the transfer of cases and proceedings filed in a proper venue under § 1408.

The alternative statutory interpretation proffered by the Trustee is not without its own problems. Chief among these is that it requires the Court to assume that Congress intended for § 1406 to assume a scope well beyond that which it possessed before 1984, without any evidence as to such an intent. Nonetheless, a number of considerations weigh in favor of this interpretation.

It is undisputed that § 1406 has long served as the companion to § 1404, governing disposition of improperly venued civil actions. One might expect that given this lineage, the language of the provision would be at odds with its applicability to bankruptcy. However, contrary to § 1404's "civil action" terminology, § 1406's language is more general and applies to "a case laying venue in the wrong division or district." As such, it is fully in accord with the "case" and "district court" language of § 1408 and § 1412. Consequently, there is nothing on its face that would preclude the application of § 1406 to bankruptcy cases.

A number of bankruptcy courts confronting the applicability of § 1406 to bankruptcy have found guidance in the Supreme Court's decision in *Conn. Nat. Bank v. Germain,* 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). *See, e.g., In re Sorrells,* 218 B.R. 580, 586–87 (10th Cir. BAP 1998); *In re Swinney,* 300 B.R. 388, 392 (Bankr.M.D.Ga.2003). The Court in *Conn. Nat. Bank* was faced with a problem of statutory construction similar to the one at bar, and concluded that a bankruptcy-specific statute did not operate by negative implication to negate the applicability of a nonbankruptcy-specific statute to the bankruptcy arena. The Court observed that "the statutes do not pose an either-or proposition," since, although the two sections overlap, "each section confers juris-

diction over cases that the other section does not reach." *Connecticut Nat. Bank v. Germain*, 503 U.S. at 253, 112 S.Ct. 1146. The Court cautioned that "so long as there is no positive repugnancy between two laws, a court must give effect to both." *Id.* (internal citation omitted).

 The *Swinney* court found the *Conn. Nat. Bank* holding to be directly pertinent to and dispositive of the question of § 1406's applicability to bankruptcy cases.

> [T]here is one bankruptcy specific code section [§ 1412] that is silent [on wrongly venued bankruptcy cases] and one section [§ 1406], while not bankruptcy specific, that addresses the issue before the Court. Therefore, 28 U.S.C. § 1406 applies to cases that are not addressed in 28 U.S.C. § 1412, namely cases filed in the wrong venue.

300 B.R. at 392. Similarly, in *Sorrells*, the court found that "[s]ince there is no bankruptcy-specific statute applicable to improperly venued cases, section 1406(a) must apply in bankruptcy, requiring such a case to be dismissed or, if it be in the interest of justice, transferred to a court in which venue is proper." 218 B.R. at 587. This Court finds the reasoning of *Swinney* and *Sorrells* to be well-founded. In combination with the foregoing analysis of the proper scope of § 1412, the Court is persuaded that it is not within the bankruptcy court's authority to retain a case improperly venued.

 Finally, the Court considers the voice of the Advisory Committee' Notes. The Notes on Rule 1014 for the 1987 Amendment of the Bankruptcy Rules read as follows:

> Both paragraphs 1 and 2 of subdivision (a) are amended to conform to the standard for transfer in 28 U.S.C. Sec. 1412. Formerly, 28 U.S.C. Sec. 1477 authorized a court either to transfer or retain a case which had been commenced in a district where venue was improper. However, 28 U.S.C Sec. 1412, which supersedes 28 U.S.C. Sec. 1477, authorizes only the transfer of a case. The rule is amended to delete the reference to retention of a case commenced in the improper district. Dismissal of a case commenced in the improper district *as authorized by 28 U.S.C. Sec. 1406* has been added to the rule. If a timely motion to dismiss for improper venue is not filed, the right to object to venue is waived.

(emphasis added). Clearly the Committee viewed § 1406 as governing wrongly venued bankruptcy cases. However, this by itself, proves nothing. Under 28 U.S.C. § 2075, "the rules shall not abridge, enlarge, or modify any substantive right." Thus, if the Court deems Rule 1014 to be beyond the scope of its enabling statute, or if the statutory provision claimed as enabling is deemed inapplicable, then the Rule is not binding on the Court.

> However, as the 9th Circuit Bankruptcy Appellate Panel has stated,
>
> The bankruptcy rules were "studied by committees of experts, then adopted by the Supreme Court, and became effective only after submission to Congress for review." Court rules are entitled to a presumption that they were promulgated within the proper authority of the Supreme Court and do not affect substantive rights. A party contending that a court rule violates substantive rights bears a heavy burden of proof.

*In re Neese*, 87 B.R. 609, 611 (9th Cir. BAP 1988) (internal citations omitted). While the federal rules of procedure do not carry a legal weight equivalent to federal statutes, they do warrant considerable deference. As described above, the Bankruptcy Rules are prescribed under the

auspices of the Supreme Court and are subject to congressional review before they become effective. Thus, Congress effectively ratified the Committee's interpretation of the statute. As the Sorrels court found, "it is hard to imagine why Congress would not have acted to nullify the Rule [1014] if it believed that it was contrary to its intent when it repealed sections 1475 and 1477 and enacted section 1412." 218 B.R. at 588; see also *In re Washington, Perito & Dubuc*, 154 B.R. 853, 858 (Bankr. S.D.N.Y.1993).

Although the Advisory Committee Notes clearly claim § 1406 as authority for Rule 1014(a)(2), the Rule is not entirely consistent with that statute. Most significantly, § 1406 allows for transfer of improperly venued cases "to any district or division in which it could have been brought." Rule 1014(a)(2), in contrast, allows transfer to "any other district." Additionally, the Rule allows transfer in the interest of "justice or for the convenience of the parties," whereas the statute provides transfer only "if it be in the interest of justice." These discrepancies seem to indicate that the drafters of 1014(a)(2), combined elements of § 1412 and § 1406 in crafting this provision entitled *Cases filed in improper district*. Such a construction is contrary to the reading adopted by the Court herein that § 1412 governs properly venued cases, whereas improperly venue cases are governed exclusively by § 1406.

 Where there is a conflict between a Rule and its enabling statute, the statute must prevail. *See* Fed. R. Bankr.P. 9030 ("These rules shall not be construed to extend or limit the . . . venue of any matters therein."). The Court holds, therefore, that transfer of a wrongly venued case or proceeding is permissible only to a forum in which venue would have been proper in the first instance, in accord with the clear language of § 1406.

## V. CONCLUSION

 The question of proper interpretation of the bankruptcy venue statutes is an exceedingly difficult one. There are strong, well-reasoned arguments on both sides of the debate. Clues as to Congress's intent are meager at best. Upon close examination and applying appropriate rules of statutory construction the Court concludes that 1) 28 U.S.C. § 1408 sets forth mandatory requirements for establishing proper venue; 2) 28 U.S.C. § 1412 governs the transfer of bankruptcy cases filed in the proper venue; 3) 28 U.S.C. § 1406 governs the transfer of cases, including bankruptcy cases, filed in an improper venue; 4) and Fed. R. Bankr.P. 1014(a)(2) should be interpreted to authorize the transfer of cases only to a district in which it could have been properly brought under 28 U.S.C. § 1408, in conformity with the Rule's enabling provision, 28 U.S.C. § 1406.

Do the Court's findings reflect the precise intentions of Congress in enacting the 1984 revisions? Is this the "best" outcome? The first question cannot be answered with any certainty, given the meager evidence as to intent available. However, based on a thorough analysis of the statute and its history, the Court is confident that its findings represent the most coherent reading of the statute as a whole in conformity with accepted norms of statutory construction. Answering the second question is simply beyond the scope of the Court's duty and expertise. "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'" *In re Fulbright*, 319 B.R. 650, 659 (Bankr.D.Mont.

2005) (quoting *United States v. Granderson*, 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (Kennedy, J. concurring)).

For the reasons set forth herein, the judgments of the bankruptcy court in *In re MacDonald* and *In re Thompson* are hereby **AFFIRMED,** and the judgment of the bankruptcy court in *In re Jordan* is hereby **REVERSED** and **REMANDED** to the bankruptcy court for further proceedings in conformity with this opinion.

**IT IS SO ORDERED.**